Unmute your microphone. Council, unmute your microphone. Unmute. Yes. Okay. Alright. Can you hear me? Yes, now we can. Okay, great. May it please the court, my name is Kristen Santillo on behalf of defendant appellant Francesca Morales. Reclaiming the United States was a watershed decision that established that a defendant cannot be held criminally liable under 18 U.S.C. section 922G unless the defendant has knowledge of the status that prohibits them from possessing a weapon. Otherwise, the defendant's conduct could very well be innocent and the statute was intended to punish wrongful conduct. Now, before a hate was ever decided, Ms. Morales was convicted by a jury of a section 922G offense when there was no evidence whatsoever in the record about her knowledge of her status as somebody who had been convicted of a term of imprisonment exceeding a year. Now, there was a stipulation in the case, but the stipulation only said that she had been convicted of a crime that was punishable by a term exceeding a year. It didn't say anything about her knowledge of her status. And at trial, the district court affirmatively misinstructed the jury that the government didn't have to prove that Ms. Morales had knowledge of her status. You know, it's undisputed that after a hate, this was a clear and obvious error. So, the only question before the court is whether the third and fourth prongs of the plain error test have been met, which are whether this affected Ms. Morales' substantial rights and whether it seriously affected the fairness, integrity, or public reputation of judicial proceedings. Now, in light of the lack of evidence in the record that Ms. Morales had any knowledge of her status and the relatively tame nature of her prior convictions, which would have given her every incentive to litigate the issue if the correct standard had been applied, Ms. Morales' conviction must be reversed under Rehafe and this court's clear precedent. You know, we've had a line of cases since Rehafe was decided and not one of them prevailed because of they should have known, or it was overwhelming evidence, or they acted as if they knew. But this seems to be the first case that I've seen where Ms. Morales genuinely did not know that she had been convicted of a felony. Well, I did file a 28-J letter, which identified this case, United States v. Johnson, which was recently decided by this court. And I can give you the citation. It's 2020 Westlaw 3864945. And in that case, the court held that, you know, obviously Miller, under the facts of Miller, the court held that where a defendant has spent more than a year in jail, it's presumed that that defendant has knowledge of his status. Johnson distinguished Miller and said, you know, where a defendant isn't sentenced to a term of imprisonment for more than a year, then the presumption in Miller doesn't apply. And, you know, so they specifically say in Johnson, the fact that neither of Johnson's two felony convictions actually resulted in prison sentences of more than a year weighs against the government and in favor of concluding that Johnson might not have pleaded guilty absent the error. So I think this would be the second case. While Johnson arose in the context of a plea context, this is a trial case. So I think if you look at, you know, the record evidence, which consists of the stipulation that doesn't speak at all about the knowledge of her status, the PSR that says she was convicted of two conditional discharges, there's nothing to suggest that she would have had knowledge that she was convicted of a crime that was punishable by a term exceeding a year. Didn't her sentence make this together with, wasn't she sentenced together for this offense with the other underlying offenses, so that if we reverse this conviction, it wouldn't necessarily change the sentence to which she was, which was issued? Well, you know, I think the court has a path, you know, it doesn't accept that, you know, if somebody is unjustly or wrongfully convicted of a specific statute, that it means that the court can't consider on resentencing whether that specifically made a difference. You know, the court. But she wasn't sentenced separately on the 922G. It was made, it was tacked onto the other sentence. Yes, it was concurrent, but I think there's precedent that this court doesn't simply say, oh, I'm sorry, there was one conviction that was fine, so we'll just let this one stand. The court could have considered the sentences cumulatively when deciding what the concurrent sentence was for those two sentences. So I think that it's critical to go back for resentencing on Ms. Morales' case, because the rehaste error under this court's precedent in Johnson, Balde, Rehaste, clearly warrants reversal. This conviction and then back for resentencing? Yes. So you want us to reverse that we vacate the conviction on 922G and then remand for resentencing? That's the order you would request? That's what I would request. You would want us to reverse, right? Yeah. Not just vacate, but reverse because for the absence of evidence. Reverse that conviction. Well, Judge Newman is the expert on decreed language. Could you repeat the question? Apart from the language, if the conviction is either reversed or vacated, doesn't that expose your client to a new trial on that charge? Well, I think that you have a very strong defense, and I'd be happy to litigate that case. Because, you know, this is a case where there were... It sounded like you said the only remedy would be resentencing. Well, it would be, you know, at the government's discretion to decide to retry the case. You know, I think in light of the evidence in this case, I would certainly urge the prosecution not to go down that path. But I do think, you know, if the government decides not to pursue this particular charge, then resentencing is what's appropriate. But there's a risk of retrial. There is a risk of retrial. And if at trial it turns out she did know, are you then subject to a higher sentence than she got now? Well, there's no mandatory minimum with regard to that sentence. I mean, it's a hypothetical sentencing argument that I think that we could make, you know, in the future if she were to have a chance to, you know, both... Well, it also assumes that the court wouldn't accept that this was an unusual... Right now, she's got a concurrent sentence that doesn't add anything. Is that right? Yeah. And if we vacate, she is at risk of a new trial at which she might get a higher sentence. Is that right? Well, that she might get sentenced anew on the 922G count. Does she understand that your argument opens her to that risk? She understands that we're vacating, you know, that we're arguing for this specific release. Well, specific release, but does she understand there's the risk of a retrial and a higher sentence? I haven't had that particular specific discussion with her. That might trouble her. Well, would Your Honor prefer that I discuss it with her and provide a letter to the court? I'm not urging you to do anything. I'm just asking what's happened and you've told me. I'm saying that we've definitely... This actually, you know, initially we had filed an Anders brief, and before Rahafe was ever decided, Ms. Morales herself brought a pro se 2255 motion raising Rahafe's issues in the district court, and we revisited the question of whether Rahafe's relief could apply here and briefed the issue for the court on her behalf. So she intended to raise this issue. But the question that Judge Newman is asking, and I was trying to ask before, is that this relief is ephemeral. It doesn't really give her much relief. Well, you know, I'm re-sentencing the court consider new factors that have arisen since the prior, you know, since she's been serving her time. We're not touching the sentence of the other convictions. I mean, you don't ask us to. That's correct. Have you preserved an argument that the evidence was insufficient in any event to convict her? To convict her? Sorry, the evidence of her mental state with respect to her prior convictions. No, Ms. Morales stipulated at trial that she, you know, that she had the prior conviction. There was no objection to the jury instruction that the government didn't have to prove the status of her offense. And, but I think under, you know, the court's precedence, the court has permitted these claims to go forward, even in the absence of the insufficiency of the evidence charged under the plain error standard. Do you agree the sentences were concurrent? Yes. And tell me with respect to the fourth law factor, how does leaving a concurrent sentence in effect impair the reputation of the judiciary? Well, because, you know, why did the prosecution bring the charge, right? If it was irrelevant to the court's consideration or to the jury's consideration of both her guilt and the other offenses, sort of piling on of those issues. I'm not, I don't know why they brought the charge. I can guess some reasons, but my guess is irrelevant. What I'm asking is, how does leaving a concurrent sentence in place satisfy the fourth Olano factor of impairing the reputation of the courts for fairness if what we leave in place is a concurrent sentence? Because it leaves in place a conviction that is legally insufficient and factually insufficient. Is there a collateral consequence you apprehend from that other conviction? If she were to, points in her criminal history, if she... If she commits another crime. Pardon? It'd be points on her history if she commits another crime. Is that what you're suggesting? That's what I'm suggesting. We ought not to contemplate that she's going to do that, should we? Well, I think that, you know, somebody's criminal record is certainly a very important part of the criminal justice system. If she wasn't actually guilty of that offense to leave that on her record, it certainly could potentially have collateral consequences for her. Thank you, counsel. You've reserved three minutes for rebuttal. We'll hear from the government. May it please the court. My name is Jared Leno. I am an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal, as I did before the district court. The defendant's arguments here are without merit. I would submit that the key issue before this court on the merits, I think there's really two. One is whether a New York State criminal defendant who is correctly informed in the presence of counsel that they are pleading guilty to a felony, and says they understand that, does not know they're pleading guilty to a crime punishable by more than one year of imprisonment. And the second issue, which I believe the court hit on in its question earlier, is, in this case, whether there is a fairness issue, whether it gives rise to some question of the fairness of the judicial system for a sentence to be upheld that is completely concurrent with other sentences, and would not in any material way expose someone to any additional punishment. And for these reasons, we believe the judgment of conviction should be affirmed. To turn to the, I think, the question on the fairness issue. As the court mentioned, this was a completely concurrent sentence. It was the 10 year sentence on the film and possession count was imposed concurrently to the narcotics conspiracy conviction. And also I know that it's sentencing. It was clear that what was driving this sentence was one narcotics conspiracy charge, which included a massive heroin distribution conspiracy that crossed multiple states and involved numerous acts of violence, and a 10 year consecutive sentence for a shooting, for an attempted murder, in which the defendant was a participant in one of the primary orchestrators. And so not only was the sentence concurrent, but it's clear that what drove the sentence here was the other counts. And so for those reasons, I would submit that upholding that this particular sentence at the end of the day was really immaterial to sentencing and really doesn't impose any additional material adverse effect on the defendant. And the court can and should consider that and assessing the fourth prong of plain error analysis. And I'm turning briefly to the issue of... Mr. Leno, before you turn there, let me just ask you, is your argument that in substance, and I don't mean to put down the argument, but that everybody knows if they're going through the process that a felony involves a sentence of at least a year. Is that critical to your argument? So, Judge, it is critical to our argument that Ms. Morales fully understood, based on the entire record, including the supplemental record that the court has before us, relating to the plea and sentencing transcript in the state proceeding. What Your Honor pointed out is critical to our argument there, but I think it's also fair to say... How about as to the plain error arguments, the prongs, the latter two prongs of the plain error argument, that I thought you were just advancing? Yes, Judge. So I think it does go to those issues. It does go to the plain error analysis. And as we say in our brief, and as I mentioned in my opening remarks, when a defendant is told with counsel right next to them, that they are being convicted of a felony and will be a convicted felon, I think it is the ordinary understanding that anyone would have in those circumstances that the crime they are pleading guilty to and will be convicted of is punishable by more than one year in prison. So that goes to the issue of fairness. It goes to the fourth prong. You'll concede, though, that that wasn't the punishment that was imposed, right? I mean, it was sort of a gimme from back in my days. It was like a youth offender status or something. That's right, Judge. That was not the sentence that was actually imposed. But I think the court did make crystal clear. So this is different from the cases this court has heard where someone actually served more than one year in jail, and we concede that. This is not that case. But I think there's kind of three facts I would point to here that make clear that Ms. Morales knew precisely what she was pleading guilty to. The first is just the fact that she did, in fact, have this conviction. And I'm not relying on that alone, but I will note that the Miller court stated that it would be highly improbable, just even without any other evidence, for someone to plead guilty to a felony and not know it. So I think that's kind of a baseline where we start here. And the plus factor here, what we have that's in addition to the Johnson case, which Defense Counsel mentioned, is not only do we have the fact of a felony conviction, but we have a transcript where that person was told, on the record, you are going to be a convicted felon. So it's in the transcript. And not only that, but counsel was sitting right next to her. And there's a couple of points in the transcript that I just want to bring out for the court's attention. One is at the beginning of the plea transcript, Defense Counsel mentions, what about the possibility of a misdemeanor? And that's quickly pushed aside as not going to happen, as not a viable option here. And so then the plea to the felony is entered. So first of all, the notion of a misdemeanor is raised and rejected in front of the defendant. Then the defendant is told repeatedly, this is a felony count, and you will have a felony record. And the court at that proceeding repeatedly asks her something along the lines of, in multiple iterations, do you understand the words I'm using? Do you understand everything I've said? And she repeatedly said yes. And also another critical part is there is one moment where the defendant said she didn't understand something. And I think this kind of more than any other part of the transcript cuts in favor of showing that she did understand it because a break was taken. And she had the opportunity to confer with counsel. And then when the break ended, Ms. Morales then changed her answer and said, judge, now I do understand what you're saying. And so we have a very clear record in this case that we don't have in the Johnson case that shows Ms. Morales was repeatedly warned in the presence of counsel, who she had the opportunity to confer with, that she was going to be a convicted felon. And so these are really the reasons why I think on this record, while the defendant did not serve more than a year in jail and more she was not, as your honor pointed out, sentenced to more than one year in jail. It was still clear on the record she was told, you know, you're going to be to have a felony conviction. And I just, it's the ordinary meaning of that word. This court uses those terms felony and term exceeding a term of imprisonment exceeding one year, virtually interchangeably. That's what title 18. That's how title 18 defines felony. So it's not unusual that the federal courts would use that. Right, precisely. And I think the key question for this court is what did, what would the defendant have understood when she's told you're going to be a convicted felon because of this plea. And I guess the point is, you know, this court in everyday usage, it is kind of uniform. I would submit that, that it is commonly understood as this court understands it, as I think, frankly, I think everyone understands that a felony means imprisonment for more than one year. There are a couple of scattered cases that the defense points to saying, well, in some cases you can have these exceptions, but the key point is what did Ms. Morales understand? And the fact that there is, for example, this 2019 ninth circuit case that creates new law, you know, I don't, there's any reasonable argument that Ms. Morales would have been aware of a case that hadn't even been decided and wouldn't be decided for another six years. And that opinion itself acknowledges, you know, this is something we're, we're creating something of an odd interpretation here that conflicts with ordinary meaning. So I think the record here as supplemented by the transcripts is clear that Ms. Morales was clearly told she'd be a convicted felon. You know, without any, any sort of exception to that, that warning, I mean, that she, that she would have certainly understood that. And then again, there's another point that I want to come back to that, even putting all these, this, this notion aside of her clearly being instructed in this point, this felon in possession count was fully concurrent to the narcotics conviction. And it's clear in the sentence and transcript that this is not, was not driving the sentence. It was essentially conceded at trials. Defense points out that Ms. Morales had a gun in her car, had, was a participant in a narcotics conspiracy. And the, the trial in this case was really essentially a sentencing trial. It was whether or not the enhancements for an overdose death and for the attempted murder, that the firearm discharge, whether the juror would find those counts, but that was really what this trial was entirely about. Is that something we should send back to the district court to just to ensure or to assure so it can assure itself that this didn't make any difference? Well, I just, I think that on the sentence and transcript that it's clear. So this court does not need to do that. I would note that sentencing judge has, has left the bench. And so they, wouldn't be able to clarify their prior remarks, but, but even, you know, with the existing sentence and transcript and with the trial record, the, the nine 22 to the nine 22 G count was not the focus of trial. It was essentially conceded in terms of the possession count. And at sentencing, I think the judge made very, very clear that Ms. Morales was being sentenced because of the large volume of heroin. The fact that the judge found an overdose death resulted from that. The fact that Ms. Morales was involved in numerous acts of violence, including an attempted murder. These are all the facts that drove the sentencing. And I think on the sentencing record is very, very clear that the felony possession count was really not, was not a factor at sentencing. And so as, as the court, you know, going back to those questions that the court asked the defense counsel, you know, there really is no material adverse effect on Ms. Morales in terms of her, she's not going to serve an additional day in jail because of this conviction. Okay. Thank you. Thank you. Thank you.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Counsel. You reserve three minutes for rebuttal. Can you hear me? Yes. Now we can. Okay, great. So I wanted to just briefly discuss the transcript that the government invokes. It's so clear that the trial record has no evidence of the status of Ms. Morales' knowledge that her prior conviction exceeded a term of one year that the government seeks to go outside the record, which is far more than the court in Miller did, to try to expand the record. And when the government did so, they presented an incomplete record to the court and to try to discern Ms. Morales' understanding of the status of her own conviction. So, for instance, when the court said you would be a convicted felon, you know, you would be a convicted felon, do you understand that, Ms. Morales said no, and then there was a pause in the proceeding. And the court said, and then they go back on the record and she later says that she understood it. Well, what happened? What was happening in the courtroom there? Nobody can tell from the record. Additionally, there was an open question about whether a certificate of relief from disabilities was issued in connection with the sentence. That could have impacted Ms. Morales' understanding of the meaning of her sentence. Finally, at the plea colloquy, the judge specifically told Ms. Morales that the worst thing that could happen to her was that she could be sentenced to a term of imprisonment of one year, not a term exceeding one year. So, in terms of her understanding of what the potential damage from that conviction was, if anything, the transcript proves Ms. Morales' case. So, I don't think you can rely on that transcript to affirm Ms. Morales' conviction, but I think that it shows that there are triable issues here about whether or not she had any knowledge that her convictions amounted to or her convictions could have been punishable by a sentence. So, how do you respond to the government's views that this wouldn't have made any difference, though? Even if we set it aside, she's going to get the same thing. Well, you know, I think it's up to the sentencing judge to make that determination, and I would note that in previous cases when the court has been confronted with, you know, multiple convictions, and we cite some of them, the court said, you know, we likewise declined to invoke the concurrent sentence doctrine to leave intact the sentences for the convictions we affirmed because we are not confident that severity of the concurrent sentences was unaffected by the convictions we have reversed. So, clearly, the government intended to sort of pile on these convictions to have an effect, to have an effect on the jury and have an effect on the judge in terms of sentencing, and Ms. Morales should have the opportunity to argue that, you know, when you take that away, her sentence should be less. Now, Ms. Morales is sentenced to a 20-year sentence here. The mandatory minimum sentence is 15 years. So, it's not as if there isn't room for argument that the absence of this sentence could reduce her sentence. So, I think, you know, under those facts, I think the law is very clear, particularly Ather Johnson says that there's no Miller presumption here that she had knowledge of her status. You know, as in Baldy, the court, you know, focused on the fact that there were triable issues, there's a plausible trial defense. I think Ms. Morales has numerous prongs of a trial defense that she could raise. And as in Johnson, you know, she didn't serve any time in jail. So, I think all those presidents have made clear that there's a conviction on the record that, you know, can't be justified anymore after a haste. And I do think it's important for, you know, to clear her record of that. So, for those reasons and the fact that, you know, there is room to be argued on the concurrent sentence that, you know, somewhere between, you know, 15 and 20 years, this conviction could have made a difference. She should have the opportunity to make those arguments. Thank you, counsel. Thank you. That will be a reserved decision.